**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    v.                          CRIMINAL NO. 1:09CR52-4
                                        (Judge Keeley)

**ERIC BREWER,**

        **Defendant.**

**MEMORANDUM OPINION REGARDING APPLICABILITY OF
FAIR SENTENCING ACT OF 2010 TO DEFENDANT'S SENTENCE**

**I. INTRODUCTION**

The defendant in this case, Eric Brewer ("Brewer"), came before the Court for sentencing on May 18, 2011, well after August 3, 2010, the effective date of the Fair Sentencing Act of 2010 ("FSA"). Pub. L. No. 111-220. In the FSA, Congress recognized that applying a minimum mandatory five-year sentence to a defendant who dealt the amount of crack cocaine Brewer did is not "fair," where a defendant would have to sell one hundred times as much powder cocaine to receive the same mandatory sentence. Nevertheless, it neglected to extend the FSA's provisions to conduct like Brewer's that occurred before the law's effective date. Accordingly, for the reasons that follow, the Court concluded that Brewer is subject to the minimum mandatory sentence of five years provided under the prior statutory scheme.

**MEMORANDUM OPINION**

## II. <u>FACTUAL BACKGROUND</u>

A grand jury returned the indictment in this case on April 14, 2009, and a warrant for Brewer's arrest issued that same day. The indictment named Brewer in two of its nineteen counts: conspiracy to possess with intent to distribute and to distribute five grams or more of cocaine base (Count One), and possession with intent to distribute five grams or more of cocaine base and less than one hundred grams of heroin (Count Seventeen).

Authorities were unable to apprehend Brewer until October 6, 2010. Following his arrest, pursuant to a plea agreement with the Government, on December 21, 2010, Brewer entered a plea of guilty to the possession of crack as charged in Count Seventeen, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). The parties agreed that the statutory penalty for a § 841(b)(1)(B) violation, involving more than five grams of crack, included at least five years' incarceration under the version of the statute in effect at the time the indictment issued and Brewer's drug dealing activity occurred. They further agreed, however, that Brewer would retain the right to argue at sentencing that the minimum mandatory sentence should not apply to his case, and also that he would retain the right to appeal on this ground should the Court not find in his favor.

**MEMORANDUM OPINION**

At sentencing, counsel for Brewer, who had filed two thorough memoranda in aid of sentencing prior to the hearing, argued that the FSA's provisions implicitly direct sentencing courts to apply the new drug weight thresholds of § 841(b)(1) to this and all sentencings occurring after August 3, 2010. As is relevant in this case, those thresholds require proof of more than twenty-eight grams of crack for a mandatory five-year sentence. While acknowledging that some district courts have so held, counsel for the Government argued that the overwhelming weight of developing case law interpreting the FSA, and prior precedent generally, require application of the statutory penalties in effect at the time Brewer committed his offense. The Court agreed, and sentenced Brewer to sixty months of incarceration.

### III. THE FAIR SENTENCING ACT AND THE SAVING CLAUSE

#### A. History of the Saving Clause

Brewer's misfortune results not from any affirmative act of Congress in the enactment of the FSA in 2010, but rather from its failure to override a statute first passed in 1871.

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or

> prosecution for the enforcement of such penalty, forfeiture, or liability.

16 Stat. 41, Cong. Ch. 72, § 4 (February 25, 1871). This "Saving Clause" is found unchanged today at 1 U.S.C. § 109.

### B. <u>Warden v. Marrero</u>

In <u>Warden v. Marrero</u>, 417 U.S. 653 (1974), a federal habeas petitioner sought the benefit of newly-enacted legislation repealing the prohibition of parole for certain federal drug offenses. <u>See</u> Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1292. The Government urged that, in addition to saving clause language in the repealing act itself, § 109 prevented application of the repeal to any sentence imposed before its effective date. 417 U.S. at 655.

In <u>Marrero</u>, the Supreme Court recognized that the original purpose of the Saving Clause was

> to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of all prosecutions which had not reached final disposition in the highest court authorized to review them. Common-law abatements resulted not only from unequivocal statutory repeals, but also from repeals and re-enactments with different penalties, whether the re-enacted legislation increased or decreased the penalties.

<u>Id.</u> at 660. Despite the relatively limited and technical problem to which the statute was addressed, the Supreme Court broadly read §

109 "to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." Id. Thus, because the prohibition on parole to federal prisoners was an aspect of the "penalty, forfeiture or liability" for the criminal offense under § 109, it continued to apply to prisoners such as Marrero despite the statute's repeal. Id. at 661.

Justice Blackmun, joined by Justices Douglas and Marshall, dissented, arguing that the Court had never before applied the Saving Clause "other than to prevent technical abatement of a prosecution." Id. at 665 (Blackmun, J., dissenting). Moreover, "Marrero was legislatively reversed within five months[.]" Herrera v. United States, 507 F.2d 143, 145 (5th Cir. 1975)(citing Pub.L. No. 93-481, § 2 (October 26, 1974)). Correcting its oversight, Congress specifically directed that the repeal of the parole ban would apply to those convicted under the prior law.

Nevertheless, the general rule in Marrero remains; the Saving Clause of § 109 operates to preserve criminal penalties for conduct occurring while a statute is in effect unless Congress explicitly states otherwise. No such statement appears in the FSA.

### C. <u>United States v. Douglas</u>

Relying on a narrow exception to the principle articulated in <u>Marrero</u>, however, some district courts have concluded that § 109 does not operate to preserve the minimum mandatory thresholds of the previous version of § 841. For example, in <u>United States v. Douglas</u>, 746 F.Supp.2d 200 (D.Me. October 27, 2010), Judge Hornby rejected the Government's argument that <u>Marrero</u> required the court to impose a minimum mandatory sentence where a defendant's crimes and guilty plea occurred before the effective date of the FSA, even though his sentencing took place after that date. He first reviewed language from an earlier Supreme Court case interpreting the Saving Clause:

> "[T]he provisions of [the savings statute] are to be treated as if incorporated in and as a part of subsequent enactments, and therefore under the general principles of construction requiring, if possible, that effect be given to all the parts of a law the section must be enforced *unless either by express declaration or necessary implication arising from the terms of the law*, as a whole it results that the legislative mind will be set at naught by giving the effect to the provisions of [the savings statute]."

<u>Douglas</u> at 230 (quoting <u>Great Northern Railway Co. v. United States</u>, 208 U.S. 452, 465 (1908))(emphasis and alterations in original). Then, after noting that <u>Marrero</u> had not overruled this

holding, Judge Hornby argued it actually had broadened the rule in Great Northern by authorizing a court to disregard the Saving Clause when such congressional intent is evident by "'*fair* implication or expressly[,]'" as opposed to "necessary" implication, as originally stated in Great Northern. Douglas, 746 F.Supp.2d at 230 (quoting Marrero, 417 U.S. at 659 n. 10)(emphasis in original).

Armed with this more liberal interpretation, Judge Hornby concluded that several provisions of the FSA – importantly its directive to the United States Sentencing Commission to issue emergency amendments lowering guideline penalties for crack cocaine, and the statement in the Act's preamble recognizing the unfairness of the prior law – manifested Congress's intent that all future sentencings not be subject to the former minimum mandatory thresholds, and declined to apply a mandatory ten-year sentence in the defendant's case. Douglas is now on appeal before the First Circuit.

### D. **United States v. Bullard**

Brewer relies heavily on Douglas to advance his argument for a sentence below five years. Its holding is of no aid to him, however. In United States v. Bullard, ___ F.3d ___, 2011 WL 1718894, No. 09-5214 (4th. Cir. May 6, 2011), the Fourth Circuit

recently held that <u>Marrero</u> requires application of penalty provisions in effect at the time a crime occurs. Although <u>Bullard</u> reserved the question squarely before this Court regarding defendants sentenced after the FSA's effective date, <u>id.</u> at n. 5, in holding that the FSA did not apply to a defendant whose appeal remained pending when the law changed, the Fourth Circuit stated broadly that § 109 "fully applies in the sentencing context and bars 'application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense,' absent an <u>express statement</u> that the law is intended to be applied retroactively." <u>Id.</u> at 2011 WL 1718894 *10 (quoting <u>Marrero</u>, 417 U.S. at 653)(emphasis added).

At sentencing, Brewer argued that <u>Bullard</u>'s reservation of the question in footnote 5 regarding defendants sentenced after August 3, 2010, evinced a distinction between prospective and retroactive application of the FSA. That argument is unavailing, however, for it misses the critical point of <u>Bullard</u>, which focused not on the date of sentencing or conviction, but rather on when the defendant committed the offense.[1] Thus, unless Congress acts to

---

[1] This key principle from <u>Bullard</u> was stated even more broadly in an earlier, unpublished decision from our circuit, which held that the FSA "is not retroactive and is only applicable to defendants who commit their offenses after its effective date." <u>United States v. McDougald</u>, No. 10-4929 (4th Cir. April 1, 2011)(per curiam).

explicitly grant relief to persons in Brewer's situation, as it did in 1974 with regard to parole eligibility, this Court is without authority to impose a sentence below that mandated by the now-discarded version of § 841.

## IV. CONCLUSION

The Court directs the Clerk to transmit copies of this Memorandum Opinion to counsel of record and all appropriate agencies.

DATED: May 24, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE